UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

AMC PINNACLE, INC,

    Plaintiff,

v.                                    Case No: 6:18-cv-1102-Orl-40DCI

JEUNESSE, LLC and JEUNESSE
GLOBAL HOLDINGS, LLC,

    Defendants.
_____/

## ORDER

This matter is before the Court on Plaintiff AMC Pinnacle, Inc.'s ("**AMC**") Motion for Preliminary Injunction (Doc. 35 (the "**Motion**")), filed August 14, 2018, against Defendants Jeunesse, LLC and Jeunesse Global Holdings, LLC (collectively, "**Jeunesse**"). Jeunesse responded in opposition on August 28, 2018. (Doc. 38). On October 25, 2018, the Court held a hearing on the Motion. Therefore, the Motion is now ripe for disposition. After careful consideration of the Motion, responses, related filings, and the record, the Motion is due to be denied.

### I.    BACKGROUND

AMC initiated this suit on July 10, 2018, seeking injunctive and declaratory relief from Jeunesse's Demand for Arbitration (the "**Demand**") filed against former Plaintiff Arlene Chang, a principal officer and registered agent of AMC. (Doc. 27). The dispute arose from Chang's role as a Jeunesse distributor, a role in which she earned money by selling Jeunesse products and sponsoring others to become distributors. (*Id.* ¶ 6; Doc.

38, p. 2). The Demand sought recovery of nearly $700,000 in alleged commissions that Jeunesse paid Chang during her time as a distributor from 2011 to 2017. (Doc. 35, p. 1).

According to Jeunesse, the dispute is governed by the Arbitration Provision to which Chang agreed when she signed up online to become a distributor. (Doc. 38, p. 4). Jeunesse asserts that Chang again agreed to the Arbitration Provision in March 2017 by reaffirming her acceptance to the Global Policies and Procedures Terms and Conditions ("**Global Policies Agreement**"), which included the Arbitration Provision. (*Id.* at 5; Doc. 50-1).

> Section A.13.1 of the Global Policies Agreement reads, in pertinent part:
>
> All disputes, claims, demands, counts, causes of action, or controversies between the Parties, whether based in contract, statute, regulation, ordinance, tort (including, but not limited to, fraud, misrepresentation, fraudulent inducement, negligence, or any other intentional tort), or any other legal or equitable theory ("Dispute") relating to Jeunesse, its Products, the Agreement, the rights and obligations of an independent Distributor and Jeunesse, or any other claims or causes of action relating to the performance of either an independent Distributor or Jeunesse under the Agreement will be resolved in a binding, confidential, individual and fair arbitration process, and not in court. **You understand that there is no judge or jury in arbitration, and court review of an arbitration award is limited.** The only exceptions to this are that (i) each Party retains the right to sue in small claims court; (ii) each Party may bring suit in court against the other to enjoin infringement or other misuse of intellectual property rights; and (iii) each Party may apply to and obtain from any court having competent jurisdiction, a writ of attachment, garnishment, temporary injunction, preliminary injunction, permanent injunction or other equitable relief available to safeguard and protect its interest prior to, during or following the filing of any arbitration or other proceeding or pending the rendition of a decision or award in connection with any arbitration or other proceeding. Disputes over whether these exceptions apply shall be resolved by the court in which such action has been brought; all other disputes over arbitrability shall be resolved by the arbitrator. Any arbitration between the Parties will be conducted in accordance with the Federal Arbitration Act and the American Arbitration Association's ("AAA") then-current Commercial Arbitration Rules ("Rules"), except that all parties shall be entitled to discovery rights allowed under the Federal Rules of Civil Procedure. To begin an arbitration proceeding you must file a Demand for

> Arbitration in accordance with the AAA Rules and provide JEUNESSE a copy of the Demand and complete submission to Jeunesse Global LLC, 701 International Parkway, Lake Mary, Florida 32746. The decision of the arbitrator shall be final and binding on the parties and may, if necessary, be reduced to a judgment in any court of competent jurisdiction. Each party to the arbitration shall be responsible for its own costs and expenses of arbitration, including legal and filing fees. This agreement to arbitrate shall survive any termination or expiration of the Agreement.

(Doc. 50-1, p. 37–38, § A.13.1 (emphasis in original)).

On June 20, 2018, Jeunesse initiated the arbitration by filing the Demand with the Miami Division of the American Arbitration Association against Chang. (Doc. 27, ¶ 15). Thereafter, AMC filed this action to enjoin the arbitration. (*Id.* ¶¶ 35–52). In its Motion, AMC argues the dispute should not go to arbitration because: (1) Chang did not affirmatively consent to arbitrate due to Jeunesse's use of a "browsewrap" agreement; (2) the Global Policies Agreement, and therefore the Arbitration Provision, is unenforceable as illusory and unconscionable; and (3) an action seeking injunctive relief falls outside the scope of the Arbitration Provision. (Doc. 35).

In the October 25 hearing, AMC's counsel conceded the first issue regarding whether Chang consented to the Global Policies Agreement. (October 25, 2018, Preliminary Injunction Hearing, Unofficial Transcript). In its Motion, AMC initially characterized the Global Policies Agreement as a "browsewrap" agreement. (Doc. 35, p. 10). AMC argued that Chang did not affirmatively consent to the Global Policies Agreement by citing cases where "browsewrap" agreements were found unenforceable. (*Id.* at pp. 10–13 (citing *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171 (9th Cir. 2014)). However, AMC's counsel admitted that the Global Policies Agreement presented to Chang in March 2017 should properly be characterized as a "clickwrap" agreement. (October 25, 2018, Preliminary Injunction Hearing, Unofficial Transcript (admitting

repeatedly that Chang "clicked on the [March 2017] agreement" and acknowledging that "[Jeunesse] properly cites the law" regarding "clickwrap" agreements as enforceable)). In Florida, "clickwrap agreements are valid and enforceable contracts." *Segal v. Amazon, Inc.*, 763 F. Supp. 2d 1367, 1369 (S.D. Fla. 2011). Therefore, AMC concedes that Chang consented to the Global Policies Agreement.

Accordingly, the Court is left with AMC's remaining arguments regarding the enforceability and scope of the Arbitration Provision.

## II. STANDARD OF REVIEW

To obtain a preliminary injunction, as the movant, Plaintiff must establish: (1) a substantial likelihood of success on the merits of the underlying case; (2) irreparable harm in the absence of an injunction; (3) that the harm suffered by Plaintiff in the absence of an injunction would exceed the harm suffered by Defendants if the injunction issued; and (4) that an injunction would not disserve the public interest. *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1246–47 (11th Cir. 2002). "[A] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishe[s] the 'burden of persuasion' as to each of the four prerequisites." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (quoting *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998)). Further, "[i]f the movant is unable to establish a likelihood of success on the merits, a court need not consider the remaining conditions prerequisite to injunctive relief." *1-800 Contacts, Inc.*, 299 F.3d at 1247.

## III. DISCUSSION

To satisfy its burden as the movant, AMC must establish a substantial likelihood of success on its claims seeking to enjoin the arbitration demanded by Jeunesse. *See Siegel*, 234 F.3d at 1176. This requires AMC to prove that the Arbitration Provision is either (1) unenforceable or (2) that this proceeding falls outside its scope. First, AMC challenges the enforceability of the Arbitration Provision, alleging that the Global Policies Agreement, including the Arbitration Provision, is illusory and unconscionable. (Doc. 35, p. 13 n.4). Second, AMC argues that the language of the Arbitration Provision provides a "carve-out exception" for preliminary injunctions such as this one. (*Id.* at pp. 7–8). The Court finds that these arguments fail, therefore AMC cannot establish a substantial likelihood of success on the merits.

A. **Enforceability of the Arbitration Provision**

Before the Court can determine the enforceability of the Arbitration Provision, the Court must first address whether it has the authority to make such an inquiry. *See U.S. Nutraceuticals, LLC, v. Cyanotech Corp.*, 769 F.3d 1308, 1311 (11th Cir. 2014). Arguments regarding the enforceability of arbitration agreements go to the issue of arbitrability. Ordinarily, "the question of arbitrability . . . is undeniably an issue for judicial determination . . . [u]nless the parties clearly and unmistakably provide otherwise." *AT&T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). If parties "clearly and unmistakably agree" that the arbitrator should decide whether an arbitration clause applies, then questions regarding arbitrability are no longer within the bounds of the Court's authority. *Id.*

The inclusion of delegation clauses within arbitration agreements evidence parties "clearly and unmistakably agree[d]" to transfer questions of arbitrability to the arbitrator.

*Terminix Int'l Co. v. Palmer Ranch LP*, 432 F.3d 1327, 1332 (11th Cir. 2005). The Eleventh Circuit recognizes delegation clauses as an enforceable means to transfer the Court's authority to the arbitrator. *See id.* Thus, faced with a valid delegation clause, courts are required to refer claims to arbitration to allow the arbitrator to decide gateway arbitrability issues such as whether an arbitration agreement is illusory or unconscionable. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 69 (2010); *U.S. Nutraceuticals*, 769 F.3d at 1311.

Jeunesse argues that the Arbitration Provision includes a valid delegation clause, citing the following language:

> Disputes over whether these exceptions apply shall be resolved by the court in which such action has been brought; all other disputes over arbitrability shall be resolved by the arbitrator. Any arbitration between the Parties will be conducted in accordance with the Federal Arbitration Act and the American Arbitration Association's ("AAA") then-current Commercial Arbitration Rules ("Rules"), except that all parties shall be entitled to discovery rights allowed under the Federal Rules of Civil Procedure.

(Doc. 50-1, p. 37–38, § A.13.1). By incorporating the AAA rules, Jeunesse alleges that the parties agreed to delegate gateway arbitrability issues to the arbitrator. (Doc. 38, p. 13 n.1). Specifically, AAA Rule 8(a) provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." *Terminix Int'l Co*, 432 F.3d at 1332.

The Court agrees with Jeunesse that incorporation of the AAA rules gives rise to a valid delegation clause. In *Terminix*, the Eleventh Circuit found nearly identical language incorporating the AAA rules to serve as a valid delegation clause. *See id.* (quoting an arbitration agreement that stated "arbitration shall be conducted in accordance with the Commercial Arbitration Rules then in force of the American Arbitration Association"). "By

incorporating the AAA Rules, including Rule 8, into their agreement, the parties clearly and unmistakably agreed that the arbitrator should decide whether the arbitration clause is valid." *Id.* Therefore, the Eleventh Circuit referred the claims, including the issue of arbitrability, to the arbitrator. *Id.* at 1333; *see also U.S. Nutraceuticals*, 769 F.3d at 1311 (referring claims to arbitration where the parties "incorporated the rules of the [AAA] into their contract").

Therefore, the Court finds that the Arbitration Provision contained a valid delegation clause requiring the Court to refer gateway issues of arbitrability to the arbitrator. *See Terminix Int'l Co*, 432 F.3d at 1332. Accordingly, the Court declines to address AMC's arguments regarding whether the Arbitration Provision is illusory or unconscionable.

### B. Scope of the Arbitration Provision

AMC also argues that the current proceeding is covered by an exception to the Arbitration Provision, therefore the Court should retain jurisdiction rather than referring the dispute to the arbitrator. (Doc. 35, pp. 8–9). Specifically, AMC claims the preliminary injunction sought is contemplated as falling within the following carve-out language:

> All disputes, claims, demands, counts, causes of action, or controversies between the Parties . . . under the Agreement will be resolved in a binding, confidential, individual and fair arbitration process, and not in court. . . . The only exceptions to this are that . . . (iii) *each Party may apply to and obtain from any court having competent jurisdiction*, a writ of attachment, garnishment, temporary injunction, *preliminary injunction*, permanent injunction *or other equitable relief available to safeguard and protect its interest prior to, during or following the filing of any arbitration* or other proceeding or pending the rendition of a decision or award in connection with any arbitration or other proceeding.

(Doc. 50-1, p. 37–38, § A.13.1 (emphasis added)). AMC contends that this language "expressly authorizes" it to seek a preliminary injunction to "protect its right to access to

7

the courts." (Doc. 35, p. 8; October 25, 2018, Preliminary Injunction Hearing, Unofficial Transcript).

The Court is unconvinced by AMC's interpretation of the Arbitration Provision's carve-out language. Under general principles of contract interpretation, "a document should be read to give effect to all its provisions and to render them consistent with each other." *In re FFS Data, Inc.*, 776 F.3d 1299, 1305 (11th Cir. 2015) (citing Restatement Second of Contracts § 203(a) (Am. Law. Inst. 1981)). AMC's suggested interpretation would render the Arbitration Provision meaningless by permitting a party to avoid arbitration entirely by seeking an injunction to "protect its right to access to the courts." *See id.*; (Doc. 50-1, p. 37–38, § A.13.1). This interpretation would contradict surrounding language, particularly the incorporation of the AAA rules that vest the arbitrator broad authority. *See supra* Section III.A. Rather, the Court interprets the language to allow a party to seek an injunction to ensure protection of its interest with respect to money, property, or other similar interests *while the arbitration is pending*, not as means to get injunctive relief from the arbitration in and of itself. Thus, the Court rejects AMC's interpretation and finds that the instant proceeding is not covered by the carve-out exception of the Arbitration Provision. AMC therefore fails to establish a substantial likelihood of success on the merits.

## IV. CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Plaintiff's Motion for Preliminary Injunction (Doc. 35) is **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on November 30, 2018.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties